

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00314-CV

**IN THE INTEREST OF A.R.M.**, et al., Children
Appellant

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-02201
Honorable Charles E. Montemayor, Judge Presiding

Opinion by: Patricia O. Alvarez, Justice

Sitting: Karen Angelini, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed: November 4, 2015

AFFIRMED

D.M. appeals the trial court's order terminating her parental rights to her children, A.R.M., N.A.M., and K.A.M. In her only issue, D.M. asserts the evidence was neither legally nor factually sufficient for the trial court to find by clear and convincing evidence that terminating her parental rights was in her children's best interests. We conclude the evidence is both legally and factually sufficient, and we affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 11, 2013, the Department of Family and Protective Services petitioned to remove D.M.'s children from her for allegations of neglectful supervision. The trial court granted the petition and appointed the Department as temporary sole managing conservator of the children. After several permanency hearings and a bench trial on the merits, on April 29, 2015, the trial

court terminated D.M.'s parental rights to her four children based on subparagraphs (D), (E), (O), and (P) of Family Code section 161.001(1), *see* TEX. FAM. CODE ANN. § 161.001(1) (West 2014), and because it was in the children's best interests, *see id.* § 161.001(2).

D.M. does not challenge the trial court's findings concerning the statutory grounds for involuntary termination of her parental rights. *See* TEX. FAM. CODE ANN. § 161.001(1); *see also In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). Instead, she argues the trial court erred because the evidence was neither legally nor factually sufficient for it to find by clear and convincing evidence that terminating her parental rights was in her children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(2); *accord In re J.F.C.*, 96 S.W.3d at 261.

## SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

"Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them." *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi 2010, no pet.) (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent. *Id.* (citing *In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi 2006, no pet.)).

An order terminating parental rights must be supported by clear and convincing evidence that (1) the parent has committed one of the grounds for involuntary termination as listed in section 161.001(1) of the Family Code, and (2) terminating the parent's rights is in the best interest of the child. *Id.* § 161.001; *In re J.F.C.*, 96 S.W.3d at 261. "There is a strong presumption that the best interest of a child is served by keeping the child with its natural parent, and the burden is on the [Department] to rebut that presumption." *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The same evidence of acts or omissions used to establish grounds for

termination under section 161.001(1) may be probative in determining the best interest of the child. *Id.*

When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005). If the court "determines [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true," the evidence is legally sufficient. *See In re J.L.*, 163 S.W.3d at 85; *In re J.F.C.*, 96 S.W.3d at 266.

Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *accord In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re C.H.*, 89 S.W.3d at 25.

**B.      Best Interests of the Children**

A trial court may terminate a parent's rights to a child if it finds, inter alia, such "termination is in the best interest of the child." TEX. FAM. CODE ANN. § 161.001(2); *accord In re J.F.C.*, 96 S.W.3d at 261.

*1.      Evidence Regarding the Children's Best Interests*

Applying the applicable standards of review for sufficiency of the evidence, we examine all the evidence, *see In re J.F.C.*, 96 S.W.3d at 266; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005) (crediting or disregarding evidence), and recite below the evidence that especially pertains to the *Holley* factors, *see Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.

1976).  During two days of testimony, the trial court heard from five witnesses and arguments of various counsel for the Department, D.M., and the children's ad litem.

  *1.  D.M.*

D.M. testified her three children, ages seven, eight and ten, have been in the Department's custody since September of 2013.  The children were previously removed in 2006 and placed with her mother-in-law.  D.M. acknowledged additional investigations in 2009 and 2010.  The children were currently placed with D.M.'s father based on evidence of family violence occurring in D.M.'s home.  D.M. testified the Department asked her to participate in family violence and parenting classes, complete a mental health evaluation and a drug assessment, attend therapy, and to subject herself to random drug testing.

D.M. acknowledged a history of drug use, specifically synthetic marijuana, with her husband and that she was currently on probation for possession of heroin.  D.M., however, testified she had not used synthetic marijuana since February 20, 2014.  When questioned, D.M. acknowledged testing positive for opiates, but explained the positive test was the result of pain medications following a car accident.  The State also offered pictures of D.M.'s Facebook postings on June 3, 2014, which described Xanax pills being sold for $3.00 and a March 17, 2014 posting, with a picture of Kristalose baby formula with a comment reading:

> The real shit.  Well, that's what I'm good at trapping shit but I "F" with them old schools Lactose with methadone for the babies born hooked to help the kick but for me I make money and shut trap down.

With regard to mental evaluation and counseling, D.M. explained she did not like to take the medication prescribed for her bipolar condition because of the way it made her feel.  She also testified her contact with her caseworker was very limited because "she's really busy at times."  When pushed, D.M. acknowledged it had taken her eighteen months to set up a mental health appointment.

Similarly, when asked about visitations with her children, D.M. testified there were several time periods when her caseworker did not arrange for appointments and so she was unable to see her children.

> Off and on I would see them for maybe a month or two and then stop seeing them for another few months again and then see them again for another few months off and on like that back and forth.

D.M. also testified that her caseworker continues to contact her probation officer and "say things that are not true about me."

### 2. *Melinda L. Sosa, Bexar County Probation Officer*

Melinda Sosa with the Bexar County Adult Probation Department testified that D.M. was placed on her Mentally Impaired Caseload after her December 9, 2013 conviction. Sosa explained that she had been trying to assist D.M. with scheduling mental health appointments since November of 2014.

As to D.M.'s probation, Sosa testified D.M. had only completed 1.4 hours out of the required 200 hours of community service and D.M. had not provided any proof that she had attended either NA or AA meetings. D.M. was also discharged for nonattendance in her mental health outpatient treatment program. In direct contradiction to D.M.'s assertions that she was unable to obtain counseling appointments, Sosa testified that she herself scheduled D.M.'s initial psychological screening and that D.M. called and rescheduled three times.

### 3. *Deanna Melendez, a Licensed Chemical Dependency Counselor*

Deanna Melendez, a licensed chemical dependency counselor, testified she completed D.M.'s assessment for substance abuse disorders. D.M. was diagnosed with a cannabis dependency. Melendez, however, testified she felt that although D.M. was forthcoming about her dependency issues, she was evasive with regard to her criminal history and her relationship with

her husband. Melendez also confirmed D.M. did not successfully complete the Palmer Drug Abuse Program.

### 4.    *Lenora Cisneros Salazar, the Department Caseworker*

Lenora Salazar, D.M.'s caseworker, testified D.M.'s first referral was in 2006 for neglectful supervision, neglect, and physical abuse of the children. The most recent removal was for neglectful supervision stemming from "extreme fighting between the parents" when the children were present and drug use by the parents. A service plan was completed in November of 2013. Salazar testified D.M. was provided referrals to professionals to help make changes to her lifestyle and her parenting, and to assist in stabilizing her psychiatric medications. Salazar had to make several referrals for each of the providers because of D.M.'s failure to engage and "be forthcoming."

When questioned about the children, Salazar explained the children were originally doing very well in placement. However, when D.M. would visit and tell them they were going home, and show them pictures of their rooms, the children would expect to be going home. When they were not, or she did not have visitation or keep her promises, the children's behavior would decline. At one point during a visitation, D.M. was "reacting very angrily towards" Salazar necessitating involvement of police officers. Salazar described the children as "continu[ing] to do what they were doing, maybe trying to shut it out."

Salazar was also asked her opinion on whether D.M.'s parental rights should be terminated. She indicated that she believed termination was warranted based on D.M.'s instability and her behavior in front of her children. D.M. said inappropriate things to her children and expected them to keep secrets resulting in a very heavy burden, especially for the older children. D.M.'s oldest child, A.R.M., verbalized his desire not to return to D.M.'s custody because he was tired of continually moving.

### 5. *Carrie Schindler-Schuetz, Licensed Professional Counselor*

Carrie Schindler-Schuetz was the last witness. Schindler-Schuetz testified that she had met with D.M. approximately twenty-five times, but she had never met the children or been to their home. Schindler-Schuetz explained D.M's bipolar diagnosis often made it difficult to remember dates and times of appointments. She further opined that D.M. would often overact to a situation because of her diagnosis. Schindler-Schuetz felt D.M. was working diligently toward unification with her children and that, in her opinion, and from D.M.'s perspective, termination was not in the children's best interests.

On cross-examination, Schindler-Schuetz acknowledged she was unaware police were called on three separate occasions during 2014 for arguments between D.M. and her boyfriend, including an incident when D.M. threatened to burn down his house. Schindler-Schuetz also agreed that D.M. was the "type of person that needs somebody to hold her hand and organize her life and reschedule things," but Schindler-Schuetz opined that many of these symptoms were attributable to the Department's involvement and D.M.'s desire to "get her kids back."

### C. *Holley* **Factors**

The trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witness. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (requiring appellate deference to the fact-finder's findings); *City of Keller*, 168 S.W.3d at 819. The factors a fact-finder uses to ascertain the best interest of the children were set forth in *Holley*, 544 S.W.2d at 371–72; *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors). The *Holley* court warned that "[t]his listing is by no means exhaustive, but does indicate a number of considerations which either have been or would appear to be pertinent." *Id*. at 372. We address the major issues faced by the trial court below.

*1.      The Desires of the Children*

In the present case, the children were seven, eight, and ten at the time of the hearing.  The Department's caseworker testified the children missed their mother, but D.M.'s continued promises clearly disrupted their behaviors.  Additionally, the oldest child's desire to stay with the current placement was a result of continually moving when they were in their mother's care.

We hold that the desire of the children to stay with their mother does not outweigh the other evidence that their home life was chaotic, and that their emotional and physical well-being was threatened by D.M.'s abusive relationships and her inability to follow-through with promises made to the children.

*2.      The Emotional and Physical Needs of the Children and Protecting the Children from Danger Now and in the Future*

The Department sought termination of D.M.'s parental rights after an extensive history of Department involvement over a nine-year period.  Fifteen separate referrals were made to the Department and three separate family based services cases were opened during that time.  The various cases included physical abuse, neglect, and neglectful supervision.  *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) ("[A]busive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child.").

Throughout the pendency of the Department's involvement with D.M., D.M.'s actions showed her inability to care for the emotional and physical needs of the children and to protect her children from danger.  Between 2006 and 2013, D.M. was provided counseling, parenting, substance abuse, and psychological services from the Department.

In the present case, the children were removed from the home based on evidence of "extreme fighting" between the parents and both parents' positive drug tests.  Yet, D.M. continued

to live with a boyfriend who had an extensive criminal history. Her newest relationship also involved several disturbance calls to officers.

The trial court could have reasonably determined that D.M. was unable to put her children's emotional and physical needs before her own and that she was unable to protect her children from danger now or in the future. *See In re C.J.*, 392 S.W.3d 763, 770 (Tex. App.—Dallas 2012, no pet.) (looking at domestic violence in the home in a best interests determination).

### 3. D.M.'s abilities

The evidence was sufficient to find that D.M.'s abilities are limited. Throughout this case, D.M. has shown that when it comes to caring for her children or herself, she did not exercise good judgment and could not maintain steady employment. D.M. exhibited an inability to attend the necessary counseling or psychiatric appointments; she also showed a propensity to participate in abusive relationships.

Based on the evidence presented, the trial court could have reasonably concluded that D.M. lacked the decision-making skills and parental abilities to provide for and parent her children in a healthy and safe manner.

### 4. Programs Available to Assist D.M. to Promote the Best Interest of the Children

The evidence clearly supported the conclusion that D.M. needed assistance in her everyday life. Yet, even when the Department made resources available, D.M. did not reach out for assistance. The psychological and drug counseling would have provided D.M. with the skills to manage her depression and bipolar tendencies, as well as to escape domestic violence. She chose not to participate in the counseling required by the Department.

5.    *D.M.'s Acts or Omissions Which Indicate the Existing Parent-Child Relationship is Not a Proper One*

The trial court heard testimony that D.M. does not have a proper parent-child relationship with her children. She failed to protect them from physical and emotional injury during episodes of fighting with her husband. Moreover, there was evidence that she instructed the children to lie to caseworkers. Over the eight years of the Department's involvement, D.M. failed to take responsibility for placing the children in a dangerous environment, her drug use, or her inability to obtain the psychological help necessary to manage her mental issues.

**D.    Analysis**

The record clearly supports D.M.'s unwillingness to put her children's needs before her own and an inability to effect positive changes within a reasonable time. The trial court could have also reasonably believed the testimony that D.M. (1) failed to provide a safe and stable home for her children, (2) failed to provide proof of employment, and (3) failed to appropriately care for her children.

Reviewing the evidence under the two sufficiency standards, and giving due consideration to evidence that the trial court could have reasonably found to be clear and convincing, we conclude the trial court could have formed a firm belief or conviction that terminating D.M.'s parental rights to A.R.M., N.A.M., and K.A.M. was in each child's best interests. *See In re J.F.C.*, 96 S.W.3d at 266; *see also In re H.R.M.*, 209 S.W.3d at 108. Therefore, the evidence is legally and factually sufficient to support the trial court's order. *See In re J.F.C.*, 96 S.W.3d at 266; *see also In re H.R.M.*, 209 S.W.3d at 108.

**CONCLUSION**

The trial court found D.M. committed the statutory grounds supporting terminating her parental rights and that terminating D.M.'s parental rights was in the children's best interests. D.M. only appealed the best interest of the children finding.

Having reviewed the evidence, we conclude it was legally and factually sufficient to support the trial court's finding by clear and convincing evidence that termination of D.M.'s parental rights to A.R.M., N.A.M., and K.A.M. was in each child's best interests.

Accordingly, we overrule D.M.'s sole issue on appeal and affirm the trial court's order.

Patricia O. Alvarez, Justice